UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| U.S. WATER SERVICES, INC., <br><br> Plaintiff, <br><br> v. <br><br> GREG ITOH, <br><br> Defendant. | CASE NO. C11-5144BHS <br><br> ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER |

This matter comes before the Court on Plaintiff's ("U.S. Water") motion for a temporary restraining order ("TRO"). Dkt. 9. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file, held a hearing on March 3, 2011, and heard argument of the parties, and hereby grants in part and denies in part the motion for the reasons stated herein. This order is preliminary and made only for purposes of this TRO. On March 2, 2011, Itoh filed an amended answer to U.S. Water's complaint but did not directly respond to the motion for TRO. Dkt. 18.

**I. PROCEDURAL HISTORY**

On February 23, 2011, U.S. Water moved the Court to enter a temporary restraining order against Defendant ("Itoh"). Dkt. 9. On March 3, 2011, the Court conducted a hearing on the matter.

ORDER - 1

## II. FINDINGS OF FACT

1. U.S. Water is a Minnesota corporation with its principal place of business in Minnesota that sells water treatment and purification equipment, materials and services.

2. On or about February 4, 2011, U.S. Water entered into an Asset Purchase Agreement with Wellons Water Technology, LLC ("Wellons").

3. As a result of this transaction, U.S. Water now does business in the Pacific Northwest as Wellons. One of the purposes of the asset purchase was to give U.S. Water opportunities to sell and to do business with Wellons' customer base. Wellons sells and distributes water treatment and purification equipment and materials and provides related services.

4. Wellons employed Itoh from March 9, 2010 through February 3, 2011 as a sales representative. In this position, Itoh's job responsibilities included selling Wellons' products such as water treatment equipment, chemicals, and related items. Itoh called upon customers and prospective customers in Washington and Oregon.

5. In emails to Wellons' customers (specifically Total System Services, Inc ("TSS")), Itoh attempted to divert TSS' business from Wellons to Water Care (his new employer) by stating that Itoh would have been required to forfeit the accounts with which he had done business at Wellons, that U.S. Water only valued accounts worth $50,000 or more in annual revenue, that continuing employment after the asset purchase would have required Itoh to abandon his customers, and that U.S. Water is misleading the other Wellons' sales representatives about their employment.

6. The emails sent to TSS further attempted to persuade TSS to move its account from U.S. Water to Water Care by claiming that Itoh had made financial sacrifices for the benefit of TSS and suggested that TSS follow Itoh to his new place of employment due to loyalty and in recognition of Itoh's sacrifices.

7. Itoh has communicated with or called upon other Wellons' customers for the express purpose of diverting their business to Water Care. Itoh admitted during the hearing on the TRO that he is currently servicing twelve of his clients that were formerly his clients at Wellons (i.e., he has solicited them away from Wellons). Several other of Wellons' customers have confirmed that Itoh contacted them and requested their business.

8. During his employment at Wellons, Itoh persuaded one of Wellons' office employees to give him a complete list of Wellons' customers located in Washington. This list was not routinely shared among salespeople. As a result, Itoh maaged to obtain, though he contends he has returned, an 82-page list of Wellons' Washington customers with all of their contact information. Wellons treated this information as confidential trade secrets and the customer data was not widely known.

## III. CONCLUSIONS OF LAW

1. The Court has subject matter jurisdiction because there is complete diversity of citizenship between U.S. Water (a Minnesota Plaintiff) and Itoh (an Oregon Defendant), and the amount in controversy exceeds $75,000.

2. The Court has personal jurisdiction over Itoh because he has done business in Washington, and the harm alleged by U.S. Water was done for the benefit of a Washington competitor, namely Water Care.

3. U.S. Water is likely to prevail on its claims for violations of the Washington Uniform Trade Secrets Act under Chapter 19 of the Revised Code of Washington.

4. The use of Wellons' trade secrets are likely to be found to have been conducted in violation of the relevant Washington Code and likely constitute a misappropriation of trade secrets and confidential information. U.S. Water is likely to prevail in establishing that such trade secrets and confidential information was used to solicit customers for Itoh's new employer.

ORDER - 3

5. If this TRO does not issue, the Court finds that Itoh's use of the trade secrets will likely cause irreparable harm in the way of lost customers, damaged customer relationships, and lost business opportunities and goodwill.

6. The balance of hardships tips in favor of granting injunctive relief. The grant of U.S. Water's motion does not prevent Itoh from continuing in his current profession. On the other hand, failure to grant injunctive relief in this instance would likely cause serious harm to U.S. Water through the loss of customers, further impairment of goodwill and reputation, as well as improper use, disclosure and dissemination of confidential business information.

7. The public interest also weighs in favor of granting U.S. Water's motion. The public has an interest in enforcing statutory obligations under the Uniform Trade Secrets Act.

## IV. ORDER

Therefore, it is hereby **ORDERED** that

(1) U.S. Water's motion for TRO is **GRANTED in part** and **DENIED in part** as discussed herein. This TRO shall issue immediately pursuant to Fed. R. Civ. P. 65(c), with a bond in the amount of $10,000 to be posted by U.S. Water no later than March 8, 2011.

(2) A hearing on U.S. Water's motion for preliminary injunction is set for oral argument on the Court's calendar on April 12, 2011, at 1:30 p.m.

(3) The Court has set a briefing schedule for the preliminary injunction motion as follows: (a) U.S. Water's opening brief is due on or before March 11, 2011; (b) Itoh may file a response no later than March 25, 2011; and (c) U.S. Water may reply by no later than March 30, 2011.

(4) Until further order of this Court, Itoh is restrained and enjoined, whether acting alone or in concert with or through others, including but not limited

ORDER - 4

to, any officer, agent, representative, and/or employee of Water Care, from misappropriating, using, or disclosing Wellons' trade secrets and confidential information. Specifically, Itoh is not to use or reveal any Wellons' customer lists or the pricing and purchasing information concerning Wellons' customers.

(5) During the period of restraint under this TRO, Itoh is not restrained from continuing to serve the twelve customers who previously were served by Wellons and serve now as his clients at Water Care. Servicing these twelve clients will not violate the terms of this TRO.  HOWEVER, Itoh serves these clients at his own peril; should U.S. Water prevail on the merits of its claims, not limited to this TRO, Itoh may be liable to U.S. Water for whatever relief flows therefrom, to include any damages or other relief specifically traceable to these twelve clients that Itoh admits to having diverted from Wellons to Water Care.

DATED this 3rd day of March, 2011.

BENJAMIN H. SETTLE
United States District Judge

ORDER - 5